UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIANNA DAVIS,<br><br>                Plaintiff,<br><br>v.<br><br>CITY OF IDAHO FALLS, a municipal corporation; TAUTPHAUS PARK ZOO, a department of the City of Idaho Falls; RAYMOND PROBERT, an employee of the CITY OF IDAHO FALLS and TAUTPHAUS PARK ZOO; LINDA BEARD, in her official capacity as Tautphaus Park Zoo Supervisor; and ALYSSA ROD, in her official capacity as Tautphaus Park Zoo Supervisor,<br><br>                Defendants. | Case No. 4:14-CV-00550-DCN-CWD<br><br>**REPORT AND RECOMMENDATION RE: MOTION TO ENFORCE SETTLEMENT (DKT. 94.)** |

## INTRODUCTION

Before the Court is Plaintiff's Motion to Enforce Settlement. (Dkt. 94.) The parties have filed their responsive briefing and the matter is ripe for the Court's consideration. The undersigned magistrate judge has been referred this motion, and issues the following report and recommendation. (Dkt. 98.)

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter will be decided on the record without oral

REPORT AND RECOMMENDATION  - 1

argument. Dist. Idaho Loc. Civ. R. 7.1. As explained below, the Court will recommend that the motion be granted.

## PROCEDURAL AND FACTUAL BACKGROUND

This case arose out of events occurring at the Tautphaus Park Zoo (the Zoo)[1] in Idaho Falls, Idaho. Defendant Raymond "Joe" Probert worked at the Zoo as the zookeeper in charge of the large cat area. In 2007, when the events at issue began, Plaintiff Brianna Davis was a minor, working in the Zoo's educational volunteer youth program. Davis was assigned to work with Probert at the Zoo. Over the course of the years that followed, Probert and Davis engaged in a sexual relationship beginning when Davis was a minor and continuing after she turned 18 years old.

As a result, Davis brought this action against the City of Idaho Falls, the Zoo, Probert, and others. (Dkt. 4.) Davis raised claims under § 1983, Title IX, and various state tort violations. (Dkt. 4.) The claims against the named defendants other than Probert have been resolved. (Dkts. 36, 42, 60.) Default was entered against Probert and a default judgment evidentiary hearing on damages was set for May 24, 2019. (Dkts. 62, 73, 74, 83, 84, 91.) The parties filed motions regarding the scope of that hearing which the Court decided on May 22, 2019. (Dkts. 85, 86, 92.) On May 23, 2019, the day before the evidentiary hearing was set to begin, the parties engaged in settlement negotiations by way of text messages, emails, and telephone calls.

---

[1] During the events giving rise to this case, the zoo was known as the Tautphaus Park Zoo. The zoo has since been renamed and is now known as the City of Idaho Falls Zoo.

**REPORT AND RECOMMENDATION - 2**

The first communication on May 23, 2019, was an email sent at 9:34 a.m. from Probert's Counsel to Davis' Counsel stating:

> Hey, F J –
> I have Joe Probert in my office. We have discussed the advantages of settlement from his end.
>
> The problem is that Joe is of very limited means. Right now, Joe is unemployed. His room and board situation is tenuous. He yet owes his girlfriend for some room and board that he has not been able to pay.
>
> Joe has sold the house in Ammon. What money remains from that sale, is in my client trust fund – in lieu of the lien I had over the Ammon house to secure payment of my fees.
>
> What is there would easily be used up in fees incurred today and tomorrow (and an appeal if Judge Nye rules against Joe).
>
> That said, Joe has authorized me to offer $12,500, which would be paid from my client trust fund as soon as a settlement and release agreement is fully signed and delivered.
>
> Let me know as soon as you can.
>
> Thanks.

(Dkt. 94-3.) After that email, also on May 23, 2019, the parties exchanged the following text messages. (Dkt. 94-2.) At approximately 1:10 p.m., Probert's Counsel texted:

> Hey, F J. I squeezed Joe. He'd go $20k, leaving him nothing (actually negative after tax owed on sale of house, incurred to liquidate the equity in the house, which is where that $20k comes from). I'd take a hair cut to the point that Joe would have enough to pay the tax. He'd be at zero. He's doing this to have a fresh start in his old age. That's it. He has [sic] did not engineer his parent's writing him out of their will; so it would be a no-go on any provision about them choosing to put him back in their will, should they choose to do so.

**REPORT AND RECOMMENDATION - 3**

(Dkt. 94-2.)[2] At 2:56 pm, Probert's Counsel texted again:

> F J, we'll go that [sic] $22,400 now. I will advance further that $2,400 against my fee. I've found that processing monthly payments under $500 each involve so much time between the two attorneys involved it almost always is a headache. Do we have a deal to settle this fully for $22,400?

(Dkts. 94-2; 96-3, Ex. 2.) Davis' Counsel responded by text at 2:59 p.m. stating:

> Yes we are settled at $22,400. I will confirm by an email, can you draft a settlement agreement? I will also contact the court.

(Dkts. 94-2; 96-3, Ex. 2.) At 3:00 p.m., Probert's Counsel responded texting: "Yea." (Dkts. 94-2; 96-3, Ex. 2.) At 3:03 p.m., Davis' Counsel emailed Probert's Counsel stating:

> Pursuant to your text messages, we are settled at $22,400.00 payable upon execution of a settlement and release agreement. I will contact the court.

(Dkt. 94-3.) At 3:06 p.m., Davis' Counsel sent the following email to the Court:

> I'm writing to confirm that the parties have reached a settlement agreement in this matter and therefore the trial scheduled for tomorrow may be vacated. We anticipate forwarding documentation to facilitate dismissal of the action in the very near future. Thank you.

(Dkts. 94-3; 96-5.) After receiving that email from Davis' Counsel, the Court vacated the evidentiary hearing and directed the parties to file dismissal documents within thirty days. (Dkt. 93.)

> At 4:05 p.m., Probert's Counsel emailed Davis' Counsel the following:
>
> Hey, F J –
> Glad we got this settled, as I am sure you are too.
> Attached is the Settlement and Release Agreement that I've drafted.
> Let me know when you expect delivery of it, as signed by Brianna, so that I can have a check ready to send back with your courier.

---

[2] It appears some of the parties' May 23, 2019 negotiations were by telephone during which Davis requested a provision in the settlement entitling Davis to any future inheritance or devise Probert might otherwise receive from his parents. (Dkt. 96 at 3.)

**REPORT AND RECOMMENDATION - 4**

> Thanks

(Dkt. 96-6.) Attached to that email was a proposed settlement and release agreement. (Dkt. 95-1.) At 4:24 p.m., Davis' Counsel responded to Probert's Counsel stating:

> John
> Thank you for the quick turn around. I will review it and get back to you. Agreed on getting this settled.
> FJ

(Dkt. 94-3.) On May 28, 2019, Davis' counsel telephoned Probert's Counsel and informed him that Davis refused to sign the proposed agreement, objecting to the confidentiality clause and the indemnification and hold harmless clause contained within it. (Dkts. 96 at 5; 96-1, Aff. Simmons at ¶ 10.)[3]

The parties are at an impasse over the inclusion of the confidentiality and indemnification clauses in the settlement agreement. On July 8, 2019, Davis filed the motion to enforce settlement which is now before the Court. (Dkt. 94.)

## STANDARD OF REVIEW

Under Idaho law, a motion for the enforcement of a settlement agreement "is treated as a motion for summary judgment when no evidentiary hearing has been conducted." *Kosmann v. Dinius*, 446 P.3d 433, 438 (Idaho 2019) (quoting *Seward v. Musick Auction, LLC*, 426 P.3d 1249, 1255 (Idaho 2018)). Summary judgment is appropriate when "there

---

[3] There are indications of other telephone calls that were made in the course of the negotiations on May 23, 2019, which are not part of the record before the Court. (Dkt. 96 at 3.) The Court notes there may also be additional text messages regarding the dispute over the clauses that were exchanged after May 23, 2019, but those texts are also not included in the record before the Court. (Dkt. 94-2 at 5) (Wed, May 29, 6:53 PM partial text from Probert's Counsel that appears to relate to the indemnification clause.)

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).

## ANALYSIS

State contract law governs whether the parties reached an enforceable agreement settling the federal and state law claims alleged in Davis' complaint. *See Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014). "A settlement agreement is a contract resolving the parties' underlying dispute and 'stands on the same footing as any other contract and is governed by the same rules and principles as are applicable to contracts generally.'" *Seward*, 426 P.3d at 1255 (quoting *Budget Truck Sales, LLC v. Tilley*, 419 P.3d 1139, 1144 (Idaho 2018)).

"For a contract to exist, a distinct understanding that is common to both parties is necessary." *Seward*, 426 P.3d at 1258 (quoting *Wandering Trails, LLC v. Big Bite Excavation, Inc.*, 329 P.3d 368, 374 (Idaho 2014)). "A contract must be complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty." *Kosmann*, 446 P.3d at 439 (quoting *Seward*, 426 P.3d at 1258-59). "A contract can only exist when there is an understanding common to both parties. In other words, 'formation of a valid contract requires a meeting of the minds as evidenced by a manifestation of mutual intent to contract.'" *Seward*, 426 P.3d at 1259

**REPORT AND RECOMMENDATION - 6**

(quoting *Federal Nat'l Mortg. Ass'n v. Hafer*, 351 P.3d 622, 629–30 (Idaho 2015)); *see also Rouse v. Household Fin. Corp.*, 156 P.3d 569, 571 (Idaho 2007) (Under Idaho law, there must be a meeting of the minds to form a contract evidenced by a manifestation of intent to contract which takes the form of an offer and acceptance.).

Here, Davis moves the Court to enforce the parties' May 23, 2019 settlement terms which, Davis argues, are that Probert would pay Davis $22,400.00 in exchange for a dismissal with prejudice and execution of a settlement and release agreement devoid of the confidentiality and indemnity provisions proposed by Probert's counsel in the settlement agreement prepared by Probert's Counsel. (Dkts. 94; 94-1, Aff. Counsel at ¶¶ 2-3; 97 at 3; 97-4.)[4] Probert opposes the motion, arguing there was no meeting of the minds and, therefore, no enforceable settlement, and requests that the evidentiary hearing on damages be reset. (Dkt. 96.) Alternatively, Probert argues if the Court finds there was a meeting of the minds, the Court should conclude the parties' agreement includes the confidentiality and indemnification provisions. (Dkt. 96.)

Generally, oral settlement agreements do not have to be reduced to writing to be enforceable. *McColm–Traska v. Baker*, 88 P.3d 767, 770 (Idaho 2004) (citing *Lyle v. Koubourlis*, 771 P.2d 907, 909 (Idaho 1988)). "Oral agreements for settlement are generally enforceable as contracts [and] are generally held to be binding, especially when acted upon or entered on the court records...." *Kosmann*, 446 P.3d at 439 (quoting *Seward*, 426 P.3d at 1259) (citations omitted). "Whether the parties to an oral agreement or

---

[4] Davis has not filed a supporting brief with the motion but, instead, filed an Affidavit of counsel with two attachments. (Dkt. 94.)

**REPORT AND RECOMMENDATION - 7**

stipulation become bound prior to the drafting and execution of a contemplated formal writing is largely a question of intent." *Seward*, 426 P.3d at 1259 (quoting *Kohring v. Robertson*, 44 P.3d 1149, 1154 (Idaho 2002)); *see also Kaiser v. Trace, Inc.*, No. 1:13-CV-000100-EJL-CWD, 2014 WL 1745419, at * 2 (D. Idaho May 1, 2014).

"The intent of the parties to contract is determined by the surrounding facts and circumstances" of each particular case, *Seward*, 426 P.3d at 1259, such as such as: "whether the contract is one usually put in writing; whether there are few or many details; whether the amount involved is large or small; whether it requires a formal writing for a full expression of the covenants and promises; and whether the negotiations themselves indicate that a written draft is contemplated at the final conclusion of the negotiations." *Lawrence v. Hutchinson*, 204 P.3d 532, 538 (Idaho 2009); *see also Gray v. Tri-Way Const. Servs., Inc.*, 210 P.3d 63, 69 (Idaho 2009) (citing *Intermountain Forest Mngmt., Inc. v. Louisiana Pacific Corp.*, 31 P.3d 921, 925 (Idaho 2001)).

The best evidence to support the parties' intent to contract is to look at the words of counsel and their clients." *Seward*, 426 P.3d at 1259 (citations omitted). "A party's subjective, undisclosed intent is immaterial to the interpretation of a contract." *Id.* (quoting *J.R. Simplot Co. v. Bosen*, 167 P.3d 748, 751 (Idaho 2006)). "The burden of proof is on the party asserting that the contract was binding before the written draft was signed." *Intermountain Forest Mngmt.*, 31 P.3d at 925.

1. **The Parties Intended to Contract and Agreed on All of the Material Terms of the Settlement.**

The record in this case indisputably establishes both the parties' intent to contract and their mutual agreement that settled the final issue to be decided at the evidentiary hearing on damages set for May 24, 2019. *Seward*, 426 P.3d at 1259. The facts and circumstances surrounding the settlement negotiations involve relatively few details and a modest amount of money. When the parties engaged in their negotiations on May 23, 2019, default had been entered against Probert. All that remained to be resolved in the case, and the reason for the evidentiary hearing set to begin the following day, was the amount of the damages judgment Probert would be ordered to pay to Davis. Fed. R. Civ. P. 55(b)(2).

The words and conduct of the parties demonstrate that they appreciated those circumstances and that their negotiations during the course of the day on May 23, 2019, were for the purpose of fully settling the case before the evidentiary hearing on damages began. (Dkt. 94-3.) Appropriately, much of the negotiation concerned the amount of money Probert could afford to pay Davis to end the dispute without further court proceedings. The parties' words and conduct on May 23, 2019, also evidence the parties' intention and agreement that they had fully settled the case upon the terms that Probert would Davis $22,400.00 in exchange for Davis dismissing the case with prejudice and execution of a settlement and release agreement. *See* (Dkt. 94-3) ("Joe has authorized me to offer $12,500…as soon as a settlement and release agreement is fully signed and delivered."); (Dkt. 94-2) ("Do we have a deal to settle this fully for $22,400?") ("Yes we are settled at $22,400. I will confirm by an email, can you draft a settlement agreement? I will also

contact the court."); (Dkt. 94-3) ("Pursuant to your text message, we are settled at $22,400.00 payable upon execution of a settlement agreement and release agreement. I will contact the court.") ("I am writing to confirm that the parties have reached a settlement agreement in this matter and therefore the trial scheduled for tomorrow may be vacated. We anticipate forwarding documentation to facilitate dismissal of the action in the very near future.").

Those terms of the parties' agreement are complete, definite, and certain in all material respects or contain provisions which are capable in themselves of being reduced to certainty. *Seward*, 426 P.3d at 1259. There was an offer and acceptance of payment of $22,400.00 in exchange for dismissal with prejudice and both sides anticipated execution of a settlement and release agreement. Those terms are not in dispute. Nothing in the record indicates the parties intended to include any other terms in their agreement nor that there were additional terms to be worked out. The parties' communications and conduct clearly demonstrate that the parties had reached a meeting of the minds on all of those material terms of their settlement, that the settlement fully resolved the case, and they advised the Court of as much. "This exchange of promises was sufficient to create an enforceable contract." *Seward*, 426 P.3d at 1260.

**2.     The Parties Did Not Intend or Agree to Include Confidentiality or Indemnification Clauses in the Settlement Agreement.**

The record shows the parties agreed and intended to execute a settlement and release agreement at the time they reached their meeting of the minds that they had fully settled the case. In their communications to one another and to the Court, both parties stated that

**REPORT AND RECOMMENDATION  - 10**

a written settlement and release agreement would be executed. (Dkts. 94-2, 94-3, 96-6.) The draft agreement prepared and sent by Probert's Counsel to Davis at the end of the day on May 23, 2019, however, contained the confidentiality and indemnification clauses now in dispute. (Dkts. 95-1, 96-6.)[5]

Davis argues that the parties did not discuss or agree to include a confidentiality clause or indemnification clause in the settlement agreement and asks the Court to enforce the terms of their agreement, including execution of a written settlement and release agreement that omits the two disputed clauses. Probert contends he made it clear that his "objective" for negotiating a settlement on May 23, 2019, was to make a "fresh start" and the confidentiality and indemnification clauses are necessary to effectuate that purpose. (Dkt. 96.) The Court finds the record clearly shows the parties did not intend or agree to include the confidentiality or indemnification clauses in the settlement and release agreement when they reached their mutual understanding on the material terms of the agreement fully settling the case.

There is no evidence in the record that the parties had any discussion or any evidence that either side intended to include a confidentiality or indemnification clause in the settlement and release agreement. Neither Probert's mention of a "fresh start," nor any of Probert's other words or conduct in the record, objectively conveyed to Davis any indication or intention that a confidentiality or indemnification clause would be included in the settlement agreement. "A party's subjective, undisclosed intent is immaterial to the

---

[5] Other than the confidentiality and indemnification clauses, the parties do not dispute the terms of the proposed settlement and release agreement. (Dkts. 95-1, 97-4.)

**REPORT AND RECOMMENDATION - 11**

interpretation of a contract." *Seward*, 426 P.3d at 1258. "Whether there was a meeting of the minds is an objective inquiry that does not focus on the subjective beliefs or intentions of [the parties]." *Id.* at 1259. Probert's subjective uncommunicated intent with regard to terms he now claims he needs to get a "fresh start" is immaterial to the determination of whether there was an enforceable contract at the time the parties agreed to terms fully settling the case. Therefore, the words and conduct of the parties clearly shows they reached a meeting of the minds as to all material terms of their agreement.

Probert primarily relies on two cases, *Lawrence v. Hutchinson*, 204 P.3d 532 (Idaho App. 2009) and *Thompson v. Pike*, 838 P.2d 293 (Idaho 1992), where the courts found the parties' oral negotiations were not binding settlement agreements.

In *Thompson*, the court held the evidence of the communications exchanged between the parties in the record before it gave rise to a genuine issue of material fact over whether the parties intended the oral settlement or the written release to be the binding contract. 838 P.2d at 299 (concluding the district court erred by ruling the parties' oral agreement was binding). The ruling in *Thompson* was in the context of determining when the statute of limitations for a malpractice action accrued.

In *Lawrence*, the court found the parties' statement to the court that they had reached an agreement "in principle," which included a monetary settlement amount, was not an enforceable contract. *Lawrence*, 204 P.3d at 539-540. There, the court concluded "[n]either the words nor actions of the parties show a meeting of the minds on all of the material terms of the settlement agreement" and that the parties had not yet reached "a full and final

settlement agreement." *Id.* at 540. Notably, the parties in *Lawrence* had "extensive negotiations" regarding the language of the written release.

The facts and circumstances in this case differ from both *Lawrence* and *Thompson*, Here, the parties' words and actions on May 23, 2019, clearly evidence that they had reached a meeting of the minds on all of the material terms of the settlement agreement and the parties' intention and understanding was that they had reached a full and final settlement of the sole remaining question in this case, the amount of damages, that was set to be resolved the following day.[6] There is no indication in the record that there were any additional terms to be worked out or that the parties' settlement was only an agreement "in principle." The record instead shows both sides agreed to the clear and definite terms of the settlement and that those terms fully consummated and completely disposed of what was left to be resolved in this case. The execution of a written settlement and release agreement intended by both sides was to simply record and formalize the terms of the agreement to which the parties' had achieved a meeting of the minds. *See Thompson*, 838 P.2d at 299 ("An oral agreement is valid if the written draft is viewed by the parties as a mere record; the oral agreement is not valid if the parties view the written draft as a consummation of the negotiation."). The record in this case further clearly shows there was no discussion or mention of a confidentiality clause or indemnification clause, let alone

---

[6] There is no dispute that liability could not be contested at this stage of this case because default had already been entered against Probert. (Dkt. 73, 74, 82, 92.) Only the amount of damages remained to be determined: which the Court was set to take evidence at the May 24, 2019 damages hearing.

**REPORT AND RECOMMENDATION - 13**

any meeting of the minds, at the time the parties agreed to the material terms of their settlement.

This case is instead more analogous to *Seward v. Musick Auction*, 426 P.3d 1249 (Idaho 2018), where the court found the parties had reached a meeting of the minds on all of the material terms of the contract during mediation. In *Seward*, the parties notified the court they had reached a settlement following a mediation, but a dispute arose during the drafting of the settlement and release agreement where the parties disagreed over the inclusion of a confidentiality clause and other additional terms. The Idaho Supreme Court concluded, based on the parties' words and conduct, that they had entered into an enforceable oral agreement during mediation and the defendant's subjective expectations regarding additional terms were not enforceable. *Seward*, 426 P.3d at 1258-60. So too here, the record shows the parties in this case reached a meeting of the minds on all of the material terms of their agreement and intended for those terms to fully settle the case.

The written settlement agreement proposed by Davis, which omits the confidentiality and indemnification clauses (Dkt. 97-4), accurately states the terms of the settlement upon which the parties had reached a meeting of the minds, i.e., Davis' dismissal of the case with prejudice in exchange for Probert's payment of $22,400.00 and the execution of a settlement and release agreement. Again, those terms create an enforceable contract, because they are complete, definite, and certain, or contain provisions which are capable in themselves of being reduced to certainty. *Seward*, 426 P.3d at 1259. For these reasons, the Court will recommend the motion to enforce be granted and that the parties be directed to execute the written settlement agreement proposed by Davis in her motion and

**REPORT AND RECOMMENDATION - 14**

satisfy the terms as stated therein; i.e., Davis' dismissal, with prejudice, of this case against Probert upon payment of $22,400.00. (Dkt. 97-4.)

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Enforce Settlement (Dkt. 94) be **GRANTED** and that the Court order the parties to execute the settlement and release agreement proposed by Plaintiff within fourteen (14) days of the date of the Court's order adopting this recommendation and satisfy the terms as stated therein. (Dkt. 97-4.)

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: December 27, 2019

Honorable Candy W. Dale
United States Magistrate Judge